UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK ARNOLD and ELIZABETH ARNOLD, <br>     Plaintiffs, <br><br> v. <br><br> BAXTER HEALTHCARE CORP., <br>     Defendant. | Case No. 1:08-cv-02168 |

**REPLY MEMORANDUM IN
SUPPORT OF MOTION TO REMAND**

Plaintiffs Patrick Arnold and Elizabeth Arnold moved for a remand of this case to state court and for an award of attorney fees incurred as a result of removal, on the ground that both Supreme Court and Seventh Circuit case law hold that the federal courts do not have federal-question jurisdiction over garden variety tort cases such as this one. Defendant Baxter Healthcare Corporation's response vastly overstates the role of federal regulation in this case and advances a theory of federal jurisdiction expressly rejected by the Supreme Court in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986). *Merrell Dow* requires a remand here.

**I.   This Court Should Promptly Decide The Motion To Remand.**

Baxter first asks the Court not to address the motion to remand, asking it instead to leave the jurisdictional issue for the MDL court to which some of the other cases involving heparin injury have been sent. Baxter does not mention the three-part test adopted in *Alegre v. Aguayo*, 2007 WL 141891 (N.D. Ill. 2007), *Nauheim v. The Interpublic Group of Cos.*, 2003 WL 1888843 (N.D. Ill. 2003), and *Board of Trustees of the Teachers' Retirement System v. Worldcom, Inc.*, 244 F. Supp. 2d 900 (N.D. Ill. 2002), for deciding whether to first address a motion to remand or a motion to stay pending transfer. *See* Pltfs. Supp. Resp. to Motion to Stay at 1-2. Its

argument, however, addresses the second factor: whether identical or similar jurisdictional issues have been raised in other cases in the MDL proceeding. Yet the one case cited by Baxter has already been dismissed, *see* Def. Resp. at 3 & n.2, and, therefore, cannot support Baxter's argument that the Court would further "judicial economy" by not ruling on the remand motion here.

Although Baxter (at 2) states that four other cases have been removed "at least in part, on federal question jurisdiction," it fails to identify those cases and the purported bases for removal in them. Indeed, Baxter does not even state whether motions to remand are pending in the four unidentified cases. Thus, neither Plaintiffs nor this Court can ascertain whether the cases present contested jurisdictional issues, much less issues the same as or even relevant to the issue here. For example, if a case were removed based on the defendant's assertion of fraudulent joinder, the jurisdictional issue would not overlap with the jurisdictional issue in this case.[1] Thus, Baxter has offered nothing to support its assertion that "judicial economy" would be furthered by delaying a decision on the pending motion for remand.[2]

## II.     The Supreme Court Has Expressly Rejected Baxter's Jurisdictional Theory.

Turning to the merits of the motion to remand, Baxter gives short-shrift to *Merrell Dow*, the Supreme Court precedent dispositive of this motion. Instead, Baxter tries to shoehorn this case into the "slim category" of cases in which a state cause of action can support federal jurisdiction. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). In so

---

[1] For example, in *Fowler v. Hamilton Medical Center*, the now-dismissed case cited by Baxter, removal was based on fraudulent joinder, diversity, and federal question jurisdiction, and the remand motion challenged each of these points. Plaintiffs can provide copies of the relevant documents if the Court is interested.

[2] Litigation of this case has so far been delayed two months by Baxter's April 16 removal. Plaintiffs' counsel has been informed that the judge presiding over the MDL will be on vacation for nearly five weeks, beginning on July 10, 2008, which further counsels in favor of this Court deciding the pending remand motion.

doing, Baxter asks this Court to overlook the Supreme Court's admonition that "it takes more than a federal element to open the 'arising under' door," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (quoting *Grable*, 545 U.S. at 313) (internal quotation marks omitted), and the Seventh Circuit's recognition that the category of cases that will support the type of jurisdiction found in *Grable* "is narrow and the situations involved are unusual." *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007). Moreover, although products liability litigation against drug manufacturers is common, Baxter fails to cite a single case with remotely comparable facts in which a court accepted Baxter's jurisdictional theory.

Baxter declares that this case raises myriad questions relating to the Food, Drug, and Cosmetic Act (FDCA) and Food and Drug Administration (FDA) regulation of heparin. Baxter (at 6-8) provides some detail about FDA regulations addressing investigations of potential new drugs, the approval process for new drugs, and adverse event reporting. *These regulations are not at issue in this case*. The FDA approved heparin for sale in the United States decades ago, and the Arnolds neither challenge the approval nor contend that heparin was unsafe throughout most of that time. Accordingly, even if Baxter were correct that such issues would create federal jurisdiction, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow*, 478 U.S. at 810 n.6; *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.").

As Baxter points out, the Arnolds' complaint is based on allegations that heparin used by Mr. Arnold was "tainted" or "contaminated." Citing the federal definition of adulteration, Baxter (at 10) suggests that this allegation "requires the Court to decide a substantial, disputed issue of

3

federal law." In fact, heparin's contamination cannot seriously be disputed. And in light of the FDA's statements on the issue, s*ee*, *e.g.*, FDA Media Briefing on Heparin, Mar. 19, 2008, www.fda.gov/bbs/transcripts/2008/heparin_transcript_031908.pdf; FDA, Important Notice to Manufacturers, Apr. 8, 2008, www.fda.gov/cdrh/safety/heparin-notice.html, to the extent that the resolution of this issue turns on federal law, it has essentially been resolved.

To be sure, in product liability cases, plaintiffs sometimes put forth federal regulations as the standard of care, *see, e.g.*, *Merrell Dow*, 478 U.S. at 805-06, and drug manufacturers often use compliance with federal regulations as evidence of non-negligence or non-defect. *See Restatement (Third) of Torts: Prods. Liab.* § 4 & Reporters' Note, cmt. e (1998). But the Arnolds' complaint no more brings federal regulation into play than any other tort case against a drug company. Thus, Baxter's theory would support removal of most any state-law tort case brought against a drug manufacturer (or a medical device manufacturer, a food manufacturer, or an automobile manufacturer, for example). S*ee also Bennett*, 484 F.3d at 910 ("[T]he category of cases that will support the type of jurisdiction discussed in *Grable* "is narrow and the situations involved are unusual.").

Incredibly, Baxter spends only one-half page discussing the most relevant precedent, *Merrell Dow*. Baxter's only point is that only one of six causes of action in that case—for misbranding—involved a provision of the FDCA. (Notably, however, other claims alleged included negligence and strict liability in tort—precisely the claims alleged here.) Specifically, the plaintiff alleged that the company had violated the FDCA in its promotion of the drug and that the violation of the federal statute directly and proximately caused the plaintiffs' injuries. 478 U.S. at 806. In contrast, the Arnolds' complaint does not state any cause of action that

depends on showing a violation of federal law.

The Arnolds' complaint includes two allegations that refer to federal law: paragraph 7d, which alleges that Baxter "failed to comply with all statutes, laws, regulations, and safety codes" pertaining to various matters, and paragraph 7i, which alleges that Baxter "failed to exercise reasonable care in acquiring ingredients for heparin from producers and suppliers that had undergone proper inspection and evaluation, including, but not limited to, inspection and evaluation by the FDA." Unlike the pertinent allegations discussed in *Merrell Dow*, *see id.*, these allegations are not the sole basis for any cause of action, but are two of the nine alternative bases for the Arnolds' negligence and strict liability claims. Thus, if in *Merrell Dow* the allegations in support of the misbranding cause of action were insufficient to create federal question jurisdiction, the allegations here are surely insufficient as well. Moreover, unlike in *Grable*, 545 U.S. at 315, these allegations do not set forth a case in which "the meaning of a federal statute . . . appears to be the only legal or factual question contested in the case." Rather, connection of federal law to this case is no different than in "garden variety state tort law," *id.* at 318, which both *Merrell Dow* and *Grable* hold does not create federal-question jurisdiction.

Baxter focuses on paragraph 7i, asserting that it will require the court to decide what federal inspection requirements are and whether they have been met. First, even if that assertion were correct, it would no more justify federal jurisdiction than the claim in *Merrell Dow*. Baxter's theory is simply not distinguishable from Merrell Dow's theory. Second, this allegation does not create legal issues about what FDA inspection requires; it raises a factual issue that can be resolved through discovery. Third, state courts are well equipped to and experienced in interpreting federal statutes and presiding over products liability cases against drug

5

manufacturers. Yet under Baxter's theory, any state-law negligence per se claim based on a violation of a federal statute or regulation would provide a basis for federal jurisdiction. Again, *Merrell Dow* rejects that precise theory.

Baxter (at 14-15) suggests that federal jurisdiction is warranted because of a need for "uniformity" with regard to federal regulation of drugs. This argument too was made and rejected in *Merrell Dow*:

> [P]etitioner contends that there is a powerful federal interest in seeing that the federal statute is given uniform interpretations, and that federal review is the best way of insuring such uniformity. In addition to the congressional decision to preclude a federal remedy, we do not agree with petitioner's characterization of the federal interest and its implications for federal-question jurisdiction.

*See* 479 U.S. at 815-16.

Finally, Baxter's arguments that federal jurisdiction is created where a state-law cause of action against a drug company implicates foreign facilities cannot survive *Merrell Dow*. *See id*. at 816-17 (rejecting argument that question relating to extraterritorial meaning of FDCA creates special reason for federal jurisdiction). And its suggestion that this case presents particularly sensitive facts that distinguish it from other tort cases against drug companies and warrant special jurisdictional treatment has likewise been rejected. As the Supreme Court explained, "the interrelation of federal and state authority and the proper management of the federal judicial system would be ill served by a rule that made the existence of federal-question jurisdiction depend on the district court's case-by-case appraisal of the novelty of the federal question as an element of the state tort." *Id*. at 817 (citation and internal quotation marks omitted).

### III. Plaintiffs Should Be Awarded Attorney Fees And Costs Incurred In Connection With The Removal.

Baxter does not respond to the Arnolds' request for attorney fees and costs incurred as a

result of the removal of this case. As discussed in the motion to remand, the Arnolds' should be awarded a fee under § 1447(c) because Baxter "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

## CONCLUSION

For the foregoing reasons, this case should be remanded to the Circuit Court for Cook County. Plaintiffs should be awarded reasonable attorney fees incurred as a result of removal.

Dated: June 19, 2008                    Respectfully submitted,

                                        SUSAN E. LOGGANS & ASSOCIATES
                                        Attorneys for Plaintiffs


                                By:     /s/Laura P. Gordon


Susan E. Loggans, #1684663
Laura P. Gordon, #6294274
SUSAN E. LOGGANS & ASSOCIATES, P.C.
33 North LaSalle Street, Suite 3500
Chicago, IL  60602
(312) 201-8600
(312) 201-1180 (fax)


Of counsel:
Allison M. Zieve
Brian Wolfman
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20008
202-588-1000

## CERTIFICATE OF SERV ICE

I certify that on June 19, 2008, I electronically filed the attached Plaintiffs' Reply Memorandum in Support of Motion to Remand with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Leslie M. Smith
Renee D. Smith
Andrew P. Bautista
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

                        SUSAN E. LOGGANS & ASSOCIATES
                        Attorneys for Plaintiffs


                By:    /s/Laura P. Gordon


Susan E. Loggans, #1684663
Laura P. Gordon, #6294274
SUSAN E. LOGGANS & ASSOCIATES, P.C.
33 North LaSalle Street, Suite 3500
Chicago, IL  60602
(312) 201-8600
(312) 201-1180 (fax)